IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN S. STARKEY,
and all other persons and
entities similarly situated,

        Plaintiffs,

v.                              CASE NO. 5:18-CV-94 (Bailey)

EQT PRODUCTION COMPANY and
STONE ENERGY CORPORATION,

        Defendants.

ELECTRONICALLY FILED
May 24 2018
U.S. DISTRICT COURT
Northern District of WV

## CLASS ACTION COMPLAINT

Now comes the Plaintiff, who for his Complaint against the Defendants, EQT Production Company and Stone Energy Corporation, state as follows:

1.      Named Plaintiff, John S. Starkey, a widower, is at all times material and relevant herein has been a resident of Wetzel County, West Virginia and is the owner of oil and gas mineral interests located in Wetzel County, West Virginia.

2.      Upon information and belief, the Defendant, EQT Production Company ("EQT"), is and has been at all times material and relevant herein, a for profit corporation organized and existing under the laws of the State of Pennsylvania with its principle place of business in Pittsburgh, Pennsylvania.

3.      Upon information and belief, the Defendant, Stone Energy Corporation ("Stone"), is and has been at all times material and relevant herein, a for profit corporation organized and existing under the laws of the State of Delaware with its principle place of business in Lafayette, Louisiana.

4. Plaintiff John S. Starkey executed an oil and gas lease agreement with Chesapeake Appalachia, LLC on or about February 19, 2009.

5. The full form of the oil and gas leases include the following language:

(B) ROYALTY: To pay Lessor as Royalty, less all taxes, assessments, and adjustment on production from the Leasehold, as follows:

1. OIL: To deliver to the credit of Lessor, free of cost, a Royalty of the equal one-eighth (1/8) part of all oil and any constituents thereof produced and marketed from the Leasehold.

2. GAS: To pay Lessor on actual volumes of gas sold from said land, one-eighth of the net amount realized by Lessee, computed at the wellhead. As used in this lease, the term "net amount realized by Lessee, computed at the wellhead" shall mean the gross proceeds received by Lessee form the sale of oil and gas minus post-production cost incurred by Lessee between the wellhead and the point of sale. As used in the lease, the term "post-productions costs" shall mean all costs and expenses of (a) treating and processing oil and/or gas, and (b) separating liquid hydrocarbons from gas, other than condensate separated at the well, and (c) transporting oil and/or gas, including but not limited to transportation between the wellhead and any production or treatment facilities and transportation to the point of sale, and (d) compression case for transportation and delivery purposes, and (e) metering oil and/or gas to determine the amount sold and/or the amount used by Lessee, and (f) sales charged, commissions and fees paid to third parties (whether or not affiliated) in connection with the sale of the gas, and (g) any and all other costs and expenses of any kind or nature incurred in regard to gas, or the handling thereof, between the wellhead and the point of sale. Lessee may use its own pipelines and equipment to provide such treating, processing, separating, transportation, compression and metering services, or it may engage others to provide such services; and if Lessees uses its own pipelines and/or equipment, post-production costs shall include without limitation reasonable depreciation and amortization expense related to such facilities, together with Lessee's cost of capital and a reasonable return on its investment in such facilities. Prior to payment of royalty, Lessor may be required to execute a Division Order certifying Lessor's interest in and surveillance fees and deduct a proportionate share of the amount so paid from any monies payable to Lessor hereunder. Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00).

6. Defendants EQT and Stone, by and through their predecessors, subsidiaries and/or partners, acquired the lease of the named Plaintiff John S. Starkey in West Virginia and have, upon information and belief, obtained other of Chesapeake Appalachia, LLC's lease interests in West Virginia.

7. Defendants EQT and Stone have engaged in oil and gas production efforts under authority of the subject agreements and have deducted post-production costs from royalty checks due and payable to John S. Starkey and other similarly situated persons and/or entities.

8. In <u>Davis v. Hardman</u>, 148 W.Va. 82 (1963) the West Virginia Supreme Court determined that "a distinguishing characteristic of [the landowner's royalty] is that it is not chargeable with any of the costs of discovery and production."  West Virginia law has held that "unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the production the point of sale."  <u>Wellman v. Energy Resources, Inc.</u>, 210 W.Va. 200, at Sly Pt. 4 (2001).

9. "If an oil and gas lease provides that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, the lessee shall be entitled to credit for those costs to the extent that they were actually incurred and they were reasonable. Before being entitled to such credit, however, <u>the lessee must prove, by evidence of the type normally developed in legal proceedings requiring an accounting, that he, the lessee, actually incurred such costs and that they were reasonable</u>."  <u>Wellman v. Energy Resources, Inc.</u>, 210 W.Va. 200, at Sly Pt. 5 (Emphasis added).

10. <u>Estate of Tawney v. Columbia Natural Res., L.L.C.</u>, 219 W. Va. 266, 272, 633 S.E.2d 22, 28 (2006) provides that: "[l]anguage in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of

sale must expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty . . . and <u>indicate the method of calculating the amount to be deducted from the royalty for such post-production costs</u>." (Emphasis added.)

11. Defendants EQT and Stone owed duties and had responsibilities to comply with the lease terms and conditions.

12. The subject lease lacks any specific method of calculating the amount of alleged post-production costs to be deducted directly from the Lessor's share of production and, at best, create ambiguity in the language of the lease agreement itself.

13. Further confusion is found in the language purporting to allow the defendants to deduct "reasonable depreciation and amortization expenses relating to [its own pipelines and/or equipment], together with Lessee's cost of capital and a reasonable return on its investment in such facilities."

14. There is no proof that any of the actual costs deducted by the operators have actually been incurred or that they are reasonable in any way. The burden is on the lessees to prove, by evidence of the type normally developed in legal proceedings requiring an accounting, that the lessees actually incurred such costs and that they were reasonable.

15. Defendants EQT and Stone had the responsibility to pay John S. Starkey and all other similarly situated persons and/or entities all moneys exactly due and owing to them under and pursuant to the lease above.

16. Defendants EQT and Stone were responsible to account for the oil and/or gas which was removed from John S. Starkey and all other similarly situated persons' and/or entities' mineral interest and to pay them all money exactly due them.

17. Defendants EQT and Stone were responsible to not withhold moneys from the royalties due to John S. Starkey and all other similarly situated persons and/or entities.

**COUNT I: BREACH OF CONTRACT; BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

18. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

19. Despite lacking proper lease language to allow the deduction of production and/or post-production costs from the mineral owner's royalty share, Defendants EQT and Stone have affirmatively taken post-production costs from the mineral owner's royalty share.

21. By deducting production costs, including post-production costs, Defendants EQT and Stone have breached the lease of John S. Starkey as well as the leases of all other similarly situated persons and/or entities.

22. Through the actions outlined above, Defendants EQT and Stone have breached the implied covenant of good faith and fair dealing inherent in the lease of John S. Starkey as well as the leases of all other similarly situated persons and/or entities.

23. Defendants EQT and Stone wrongfully and intentionally breached their contract and duty of good faith and fair dealing with the Plaintiff and all other similarly situated persons and/or entities through the retention and deduction of post-production costs from the royalty share payable to them.

24. The Plaintiff and all other similarly situated persons and/or entities have been damaged through Defendants EQT and Stone's breaches in that they have not received monies that were due and owing to them and have been prevented from using said monies for their own personal purposes including but not limited to the investment of those monies.

25. Defendants EQT and Stone's intentional and willful acts of breach of contract and breach of the implied duty of good faith and fair dealing were done with actual malice and/or such a conscious disregard for the rights of other persons that they had great probability of causing substantial harm. Defendants EQT and Stone's actions were a conscious wrongdoing that was deliberate and/or intentional.

26. Punitive damages are appropriate to punish and deter the Defendants' conduct and to prevent future similar conduct by other individuals and/or entities.

## COUNT II: CONVERSION

27. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

28. The Plaintiff and all other similarly situated persons and/or entities owned mineral rights and had the right to receive full payment for their royalty interest.

29. Defendants EQT and Stone wrongfully and intentionally kept and withheld payments, benefits and property rights rightfully due and owing the Plaintiff and all other similarly situated persons and/or entities through the retention and deduction of post-production costs from the royalty share payable to them.

30. The Plaintiff and all other similarly situated persons and/or entities have been damaged through Defendants EQT and Stone's conversion in that they have not received monies that were due and owing to them and have been prevented from using said monies for their own personal purposes including but not limited to the investment of those monies.

31. Defendants EQT and Stone's intentional and willful acts of conversion of the Plaintiff' and others property were done with actual malice and/or such a conscious disregard for

the rights of other persons that they had a great probability of causing substantial harm. The Defendants' actions were a conscious wrongdoing that was deliberate and/or intentional.

32. Punitive damages are appropriate to punish and deter the Defendants' conduct and to prevent future similar conduct by other individuals and/or entities.

## COUNT III: BREACH OF FIDUCIARY DUTY

33. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

34. The relationship that existed between the Defendants and the Plaintiff, as well as all other similarly situated individuals and/or entities, created fiduciary duties and responsibilities by the Defendants towards the Plaintiff and other individuals and/or entities.

35. Defendant EQT and Stone's actions in deducting post-production costs when the oil and gas lease language at issue did not permit such deductions demonstrates that the Defendants failed to meet and follow their fiduciary responsibilities.

36. The Plaintiff and all other similarly situated persons and/or entities have been proximately injured and damaged by the actions of the Defendants in failing to meet their fiduciary responsibilities.

37. The Defendants intentionally, deliberately, and/or recklessly deducted post-production costs from the royalty share of the Plaintiff and all other similarly situated persons and/or entities when they knew or should have known that the lease language at issue did not permit such deductions.

38. The Defendants' actions were done with actual malice and/or such a conscious disregard for the rights of other persons that they had a great probability of causing substantial

harm.  The Defendants' actions were a conscious wrongdoing that was deliberate and/or intentional.

39. Punitive damages are appropriate to punish and deter the Defendants' conduct and to prevent future similar conduct by other individuals and/or entities.

### COUNT IV: INTENTIONAL MISREPRESENTATION

40. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

41. Defendants intentionally misrepresented to Plaintiff and all other similarly situated persons and/or entities that Defendants: (1) would provide an honest and lawful accounting; (2) were entitled to take deductions from Plaintiff' royalty; (3) were entitled to take the amount of deductions they took; (4) had contractual authority to reduce Plaintiff' royalty payments; (5) had contractual authority to overcharge Plaintiff for services; and/or (6) wrongfully claimed Plaintiff' royalty due was less than the amount actually due, thereby denying Plaintiff and others the rents and royalties to which they were due.

42. Plaintiff and all other similarly situated persons and/or entities justifiably relied and are required to rely on the Defendants for the honest accounting and lawful payments to Plaintiff of royalty owed to them.

43. Plaintiffs were damaged as a result of Defendants' knowing and unlawful acts and omissions in continuing to take deductions from Plaintiff' royalties, failing to pay Plaintiff the fair value of money owed to them for gas at the point of sale and by Defendants taking this money and using it for themselves.

44. As a proximate result of the wrongful, knowing, and fraudulent acts and omissions of Defendants, Plaintiffs were damaged as aforesaid.

## COUNT V: DECLARATORY JUDGMENT

45. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

46. By deducting production costs, including post-production costs, without authority under the contract prior to making the oil and/or gas produced from the Plaintiff' properties marketable, Defendants EQT and Stone have breached the implied duty to market established in Syl Pt. 4 Wellman v. Energy Resources, Inc, 210 W.Va. 200 (2001).

47. By making post-production cost deductions in the absence of required lease language that: (1) expressly provides that the Plaintiff shall bear some part of the costs incurred between the wellhead and point of sale; (2) identifies with particularity the specific deductions Defendants EQT and Stone intended to make; and (3) indicates the method of calculating the amount to be deducted; Defendants EQT and Stone have violated Estate of Tawney v. Columbia Natural Res., L.L.C., 219 W. Va. 266, 272, 633 S.E.2d 22, 28 (2006).

48. The Plaintiffs seek a declaratory judgment that the lease language at issue in this case is not sufficient to permit the deduction of any production costs, including post-production costs, from the royalty share attributable to the Plaintiffs.

49. The Plaintiffs seek a declaration that any and all production and/or post-production costs deducted from the Plaintiff' royalty were improper.

50. The Plaintiffs seek the return of any and all production and/or post-production costs deducted from the Plaintiffs' royalty share by the Defendants.

51. The Plaintiffs seek the return of any and all post-production costs that were not actually incurred or reasonable.

52. The Plaintiffs seek an order confirming that the Defendants are not entitled to deduct any future post-production costs from the Plaintiffs' royalty shares.

53. As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have been forced to incur substantial costs, expenses and attorneys' fees.

**CLASS ALLEGATIONS**

54. The Plaintiffs re-allege and incorporate by reference the previous paragraphs of this complaint as if specifically set out herein.

55. This civil action is an appropriate case to be brought and prosecuted as a class action by Plaintiffs against defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure.

56. There exists a class of individuals like John S. Starkey who own oil and/or gas rights in West Virginia and who have entered into leases of those rights and which defendants are the lessees or have been otherwise assigned the rights and responsibilities under and pursuant to said leases.

57. Upon information and belief, the lease language used in the subject leases regarding gas royalty payments was used in other lease agreements entered into between West Virginia mineral owners and Chesapeake Appalachia, LLC.

58. Upon information and belief, Defendants EQT and/or Stone had and/or obtained many Chesapeake Appalachia, LLC leases which would include that same royalty language.

59. Upon information and belief, Defendant Stone and/or its affiliates and/or additional assigns have deducted post-production costs from all other oil and gas lessor royalty shares who have the same royalty language at issue in the subject leases.

60. Pursuant to Rule 23 of the Federal Rules of Civil Procedure the Plaintiffs bring their claims for breach of contract, breach of implied covenant of good faith and fair dealing,

conversion, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, and declaratory judgment on behalf of all individuals who executed West Virginia lease agreements with Chesapeake Appalachia, LLC, whose leases included the same or substantially similar royalty language, and who have had post-production costs deducted by Defendants Stone and/or EQT from their royalty share.

61. Certification of the Plaintiffs' claims for class-wide treatment is appropriate, as the Plaintiffs can prove the elements of their claims on a class-wide basis using the same and common evidence as would be used to provide those elements in individual actions alleging the same claims.

62. Numerosity. The Plaintiffs do not know the exact number of Class members, but believe the members of the Class are so numerous that joinder of all members is impracticable.

63. Commonality. Well-defined, identical legal and factual questions affect all Class members. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

   a. Whether the lease language at issue contemplated or permitted the deduction of any post-production costs from the lessor's royalty share.
   b. Whether the Plaintiff are entitled to a judgment that the deduction of post-production costs from the lessor's share in this situation was a breach of contract.
   c. Whether the Plaintiff are entitled to judgment that the actions of the defendants in deducting post-production costs from the lessor's royalty share violated the breach of the implied covenant of good faith and fair dealing.
   d. Whether the Plaintiff are entitled to a declaratory judgment that no post-production costs may be deducted from the lessor's royalty share at any point based on the lease language at issue in this case.
   e. Whether the Defendants committed the conversion of the Plaintiff' property.
   f. Whether the Defendants breached the fiduciary duty that it owed to their lessors by deducting post-production costs from royalty shares when the lease language did not permit such deductions.
   g. Whether the Defendants made intentional and/or negligent misrepresentations to mineral owners about the nature of their royalty shares.
   h. Whether punitive damages are appropriate to punish and deter this conduct at issue and to deter future similar conduct.

64. Typicality. The Plaintiff's claims are typical of the claims of the Class. Plaintiff and all Class members were injured through the deduction of post-production costs when the lease agreement entered into by the lessors did not permit the deduction of such alleged post-production costs under West Virginia law. The same events and conduct that gave rise to the Plaintiff' claims are identical to those giving rise to the claims of every other Class member because each Plaintiff and Class member is a person that has suffered harm as a result of the Defendants' deduction of post-production costs and/or the calculation of the mineral owners' royalty share.

65. Adequacy. Plaintiff will fairly and adequately protect Class members' interests. Plaintiff have no interest antagonistic to Class member's interests. Moreover, Plaintiff have retained counsel that has considerable experience and success in prosecuting complex civil litigation, class action, and mineral rights claims.

66. Superiority. A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiff and the Class members. Plaintiff and the Class members have been harmed by the Defendants' wrongful actions. Litigating this case as a class action will reduce the possibility of repetitious litigation, inconsistent or varying adjudications, and/or incompatible standards of conduct for the parties opposing the class. Moreover, the Defendants have acted on grounds generally applicable to the class, thereby making final declaratory relief appropriate with respect to the class as a whole.

67. A class action is an appropriate method for the fair and efficient adjudication of this controversy. There is not a special interest in the members of the Class individually controlling the prosecution of separate actions. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effect and expense that numerous individual actions would entail.

68. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, the Defendants will not be prejudiced or inconvenienced by the maintenance of this class action in this forum.

69. Class certification, therefore, is appropriate under Rule 23 of the Federal Rules of Civil Procedure.

WHEREFORE, the Plaintiffs respectfully pray that judgment be entered against the Defendants, Stone Energy Corporation and EQT Production Company, for compensatory and punitive damages, prejudgment and post-judgment interest, attorneys' fees and costs expended in this action, any other specific and/or general relief as may become apparent as this matter progresses and such other relief as this Court deems proper. The Plaintiff also request that these proceedings be certified appropriate for class action treatment and that this matter proceed as such.

The Plaintiff respectfully pray that judicial declarations be entered confirming that the subject oil and gas lease does not comply with West Virginia case law requiring that the provision for post-production costs be declared null and void.

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES.

JOHN S. STARKEY,
and all other persons and
entities similarly situated,

Plaintiffs,

By:   /s/ Jeremy M. McGraw
JAMES G. BORDAS, JR., #409
CHRISTOPHER J. REGAN, #8593
JEREMY M. MCGRAW, #10325
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410